[No. 11565.  *En Banc.*  May 16, 1914.]

THE STATE OF WASHINGTON, *Appellant*, v. F. S. PITNEY, *Respondent*.[1]

CONSTITUTIONAL LAW—POLICE POWERS—EQUAL PROTECTION OF THE LAWS—DUE PROCESS — REGULATION OF BUSINESS — TRADING STAMPS. Under the recent decisions holding the police power to extend to all the great public needs, and the rule that the power should be sustained if a state of facts can reasonably be presumed to exist which would justify the legislation, 3 Rem. & Bal. Code, § 7069-1, construed as prohibiting the use of trading stamps, is a valid exercise of the police power, and hence does not violate the provisions of the state or Federal constitutions relating to the equal protection of the laws or due process of law (Overruling *Leonard v. Bassindale*, 46 Wash. 301).

MOUNT and GOSE, JJ., dissent.

Appeal from a judgment of the superior court for King county, Ronald, J., entered July 29, 1913, dismissing a prosecution for using trading stamps in violation of law, upon sustaining a demurrer to the information. Reversed.

*John F. Murphy, Robert H. Evans*, and *Brightman, Halverstadt & Tennant*, for appellant.

*Stroock & Stroock* and *Hughes, McMicken, Dovell & Ramsey*, for respondent.

MAIN, J.—The defendant in this case was by information charged with the crime of using trading stamps, in violation

[1]Reported in 140 Pac. 918.

of law. At the legislative session of 1913 [Laws of 1913, p. 413; 3 Rem. & Bal. Code, § 7069-1], an act was passed forbidding the use in connection with the sale of goods, wares or merchandise, of any stamps, coupons, tickets, certificates, cards, or other similar devices, unless a license fee in the sum of $6,000 per annum be paid, as specified in the act. A violation of any of the provisions of the act was made a gross misdemeanor. To the amended information charging the defendant with the use of trading stamps in violation of the statute, a demurrer was interposed. This was sustained by the trial court. The state elected to stand upon the amended information and refused to plead further. Thereupon a judgment dismissing the cause was entered, from which the present appeal is prosecuted.

The sole question for determination is, whether the act in question violates any provision of the state or Federal constitutions. As sustaining the judgment of the trial court, our attention is called to the following provisions of the state constitution: Art. 1, § 3, which provides, that no person shall be deprived of life, liberty, or property without due process of law; section 12, of the same article, which guarantees the equal protection to all citizens; and § 14, which prohibits excessive fines. The provision of the Federal constitution which is pointed out is § 1 of the 14th amendment, which provides that no state shall deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.

That provision of the state constitution which prohibits excessive fines need not be further noticed. For the purposes of this opinion, it will be assumed that the fee of $6,000 which the act provides for is prohibitory. In other words, the act will be considered as though it prohibited the use of trading stamps. This assumption also makes it unnecessary to determine whether the court may inquire into the amount

of the tax, when the right to tax is once established, and determine whether it is prohibitive. The provisions of the Federal and the state constitutions relative to the equal protection of the laws and due process of law are substantially the same. That the law does not violate the right of a citizen to equal protection of the laws is settled in the cases of *Fleetwood v. Read*, 21 Wash. 547, 58 Pac. 665, 47 L. R. A. 205; *Sperry & Hutchinson Co. v. Tacoma*, 68 Wash. 254, 122 Pac. 1060.

The ultimate question for determination is whether a law which prohibits the use of trading stamps violates the due process of law clause of either the state or Federal constitutions. When the constitutionality of a legislative enactment is called in question, it will be presumed constitutional and valid until the contrary clearly appears. It is the duty of the court to sustain the law, unless invalidity is so apparent as to leave no reasonable doubt upon the question. In *State v. Ide*, 35 Wash. 576, 77 Pac. 961, 102 Am. St. 914, 67 L. R. A. 280, the court speaking upon this subject said:

"Before proceeding to the consideration of the objections interposed by appellant to this poll tax law and these city ordinances, we deem it proper to observe that it is settled by the highest authority that a legislative enactment is presumed to be constitutional and valid until the contrary clearly appears. In other words, the courts will presume that an act regularly passed by the legislative body of the government is a valid law, and will entertain no presumptions against its validity. And, when the constitutionality of an act of the legislature is drawn in question, the court will not declare it void unless its invalidity is so apparent as to leave no reasonable doubt upon the subject."

If the law under consideration is a proper exercise of the police power, its constitutionality will hardly be denied. In determining the validity of the law, therefore, inquiry must be directed to whether its provisions come within the scope of the police power. The early decisions define this power as extending to those regulations promulgated by or under the

authority of the legislature which had for their object the
promotion of the public health, the public morals, or the
public safety.   Without reviewing the evolution of the law
upon this subject, as evidenced by the decisions of courts of
last resort, it may be said that, whatever may be the limits
by which the earlier decisions circumscribed the power, it
has, in the more recent decisions, been defined to include all
those regulations designed to promote the public convenience,
the general welfare, the general prosperity, and extends to all
great public needs, as well as regulations designed to pro-
mote the public health, the public morals, or the public
safety.   In *Chicago, B. & Q. R. Co. v. People of Illinois ex
rel. Drainage Com'rs,* 200 U. S. 561, 592, it was said:

"We hold that the police power of a state embraces regu-
lations designed to promote the public convenience or the
general prosperity, as well as regulations designed to pro-
mote the public health, the public morals or the public safe-
ty."

In *Noble State Bank v. Haskell,* 219 U. S. 104, it was
said:

"It may be said in a general way that the police power ex-
tends to all the great public needs.   *Camfield v. United States,*
167 U. S. 518.   It may be put forth in aid of what is sanc-
tioned by usage, or held by the prevailing morality or strong
and preponderant opinion to be greatly and immediately
necessary to the public welfare."

In *Schmidinger v. Chicago,* 226 U. S. 578, it was said:

"The right of state legislatures or municipalities acting
under state authority, to regulate trades and callings in the
exercise of the police power is too well settled to require any
extended discussion.   In *Gundling v. Chicago,* 177 U. S.
183, the doctrine was stated by this court as follows (p. 188):

" 'Regulations respecting the pursuit of a lawful trade or
business are of very frequent occurrence in the various cities
of the country, and what such regulations shall be and to
what particular trade, business or occupation they shall ap-
ply, are questions for the state to determine, and their de-
termination comes within the proper exercise of the police

power by the state, and unless the regulations are so utterly unreasonable and extravagant in their nature and purpose that the property and personal rights of the citizen are unnecessarily, and in a manner wholly arbitrary, interfered with or destroyed without due process of law, they do not extend beyond the power of the state to pass, and they form no subject for Federal interference.' "

This court, in *State v. Mountain Timber Co.*, 75 Wash. 581, 135 Pac. 645, discussing the scope of the police power, used this language:

"The scope of the police power is to be measured by the legislative will of the people upon questions of public concern, not in acts passed in response to sporadic impulses or exuberant displays of emotion, but in those enacted in affirmance of established usage or of such standards of morality and expediency as have by gradual processes and accepted reason become so fixed as to fairly indicate the better will of the people in their social, industrial and political development. If, then, the executive and judicial departments unite to uphold the will of the legislative department, it may fairly be said that all reasonable men can agree that the act is essential for the preservation of the public welfare and that the constitution does not apply."

In determining whether the provisions of a law bring it within the police power, it is not necessary for the court to find that facts exist which would justify such legislation. If a state of facts can reasonably be presumed to exist which would justify the legislation, the court must presume that it did exist and that the law was passed for that reason. If no state of circumstances could exist to justify the statute, then it may be declared void because in excess of the legislative power. In *Munn v. Illinois*, 94 U. S. 113, speaking upon this question, it was said:

"For our purposes we must assume that, if a state of facts could exist that would justify such legislation, it actually did exist when the statute now under consideration was passed. For us the question is one of power, not of expediency. If no state of circumstances could exist to justify such a stat-

ute, then we may declare this one void, because in excess of the legislative power of the state. But if it could we must presume it did. Of the propriety of legislative interference within the scope of legislative power, the legislature is the exclusive judge."

In *Home Telephone etc. Co. v. Los Angeles,* 211 U. S. 265, a like view is expressed. It is there said, quoting from a previous decision of the same court:

"But in determining whether the legislature, in a particular enactment, has passed the limits of its constitutional authority, every reasonable presumption must be indulged in favor of the validity of such enactment. It must be regarded as valid, unless it can be clearly shown to be in conflict with the constitution. It is a well settled rule of constitutional exposition that if a statute may or may not be, according to circumstances, within the limits of legislative authority, the existence of the circumstances necessary to support it must be presumed."

It follows, then, that if a state of facts could exist which would justify the legislature in forbidding the use of trading stamps, it must be presumed to have actually existed. What state of facts might reasonably have prompted the legislature to forbid the use of trading stamps in connection with the sale of merchandise? It might reasonably be supposed or presumed that the legislature believed that the use of these stamps would encourage indiscriminate and unnecessary purchasing by people ill able to indulge in any extravagance. Or suppose that the legislature believed that the use of these stamps was practically forced upon certain merchants without any practical benefit resulting therefrom, and thus they were compelled to pay $3\frac{1}{2}\%$ upon their gross sales for the use of the stamps. The legislature might reasonably have believed that the stamp companies, in order to cause the stamps to be used in a certain city, would contract with one merchant for their use, agreeing to pay him a percentage of the sums collected by them from other merchants, and then use the first contract so secured to force other merchants into

using the stamps, or suffer loss of trade by failure so to do. In other words, that legitimate business was virtually coerced into paying tribute to the stamp company, a nonproducer of wealth or value.

In the case of *Otis v. Parker*, 187 U. S. 606, the question before the court was whether a provision of the California constitution which prohibited the sale of the shares of capital stock of any corporation on margin, to be delivered at a future date, offended against the due process of law clause of the Federal constitution. It was held that the regulation provided for in the state constitution did not exceed the power of the state. It was said:

"We cannot say that there might not be conditions of public delirium in which at least a temporary prohibition of sales on margins would be a salutary thing. Still less can we say that there might not be conditions in which it reasonably might be thought a salutary thing, even if we disagreed with the opinion."

In the case of *Central Lumber Co. v. South Dakota*, 226 U. S. 157, there was under consideration an act of the legislature of South Dakota which prohibited a person in the production, manufacture and distribution of any commodity in general use from discriminating between different sections or communities or cities of the state by selling such a commodity at a lower rate in one section than in another. The constitutionality of the law was sustained. In the course of the opinion it was said:

"We must assume that the legislature of South Dakota considered that people selling in two places made the prohibited use of their opportunities and that such use was harmful, although the usual efforts of competitors were desired. It might have been argued to the legislature with more force than it can be to us that recoupment in one place of losses in another is merely an instance of financial ability to compete. If the legislature thought that that particular manifestation of ability usually came from great corporations whose power it deemed excessive and for that reason did more harm than good in their state, and that there was no other case of fre-

quent occurrence where the same could be said, we cannot review their economics or their facts. That the law embodies a widespread conviction appears from the decisions in other states (citing authorities)."

The facts hypothetically stated, as well as others that might be presumed to have existed, would seem to bring the present case within the holdings of the two cases last cited. That the law was not passed in response to "sporadic impulse or exuberant displays of emotion," but embodies a settled conviction that the use of trading stamps is harmful, is evidenced by the fact that the legislature at two different sessions has legislated against their use, first in 1905 (Laws of 1905, p. 374) and second, in 1913, the present law. We think this act of the legislature falls within the scope of the police power as it is now understood and defined by the courts, and, therefore, the legislature did not exceed its power or offend against any constitutional provision, either state or Federal, in promulgating the regulations or prohibitions found in the act. This conclusion, it must be admitted, is not in harmony with the great weight of authority, numerically speaking. But many, if not most, of the decisions that have held trading stamp laws inimical to the due process of law clause found in the constitutions were decided when the police power was defined as having a more limited scope than it has at the present time.

In considering the law of 1905 prohibiting the use of trading stamps, this court, in *Leonard v. Bassindale*, 46 Wash. 301, 89 Pac. 879, held that law unconstitutional. The holding in that case is the exact opposite of the conclusion we have reached in this case. That decision will therefore be overruled. The opinion in that case contains a suggestion that the court there concluded to follow the weight of authority, even though it would have been inclined, were the question one of first impression, to sustain the law. It was there said:

"While we might, were the question one of first impression in the courts, entertain a different opinion, we have felt im-

pelled to follow the great weight of authority and hold the statute constitutional, especially in view of the fact that the Federal courts have shown an inclination to hold the statute in contravention of the constitution of the United States."

As already stated, the due process of law clauses in the state and Federal constitutions are substantially the same. While a number of the subordinate Federal courts have held that a trading stamp law contravenes the due process of law clause of the Federal constitution, the United States Supreme Court, so far as we are informed, has never spoken upon that question. The result of this case will offer an opportunity to have the question there presented and finally determined by the court of highest authority.

The judgment will be reversed, and the cause remanded with directions to the superior court to overrule the demurrer.

CROW, C. J., ELLIS, CHADWICK, FULLERTON, PARKER, and MORRIS, JJ., concur.

MOUNT and GOSE, JJ., dissent.