[No. 14564½.  Department One.  April 26, 1918.]

## THE STATE OF WASHINGTON, *Respondent,* v. HARRY VAN VLACK, *Appellant.*[1]

FISH—CLAMS—CLOSED SEASON—STATUTES — CONSTRUCTION—"TIDE LANDS." Rem. Code, § 5150-100, making it unlawful to take clams from any of the "tide lands" on Puget Sound for the purpose of sale or canning during the closed season, applies to all lands which in their natural state are affected by the ebb and flow of the tide, regardless of whether the title has passed from the state.

SAME — CLAMS — PRIVATE OWNERSHIP. Clams, because of their fixed habitation in the soil, become the subject of private ownership when the title to clam beds passes from the state.

EVIDENCE—JUDICIAL NOTICE—NATURAL LAWS. The courts may take judicial notice of the scientific facts and well known natural laws respecting the spawning season and propagation of clams.

CONSTITUTIONAL LAW — POLICE POWER — CONSERVATION OF FOOD SUPPLY—TAKING PROPERTY WITHOUT DUE PROCESS OF LAW—CLOSED SEASON FOR CLAMS. Rem. Code, § 5150-100, making it unlawful to take clams from any of the "tide lands" on Puget Sound for the purpose of sale or canning, between the first days of April and September of each year, is a lawful exercise of the police power in promoting the general welfare by conserving and increasing the food supply; since the state, although divested of its ownership of clams on tide lands privately owned, has power to regulate the industry for the general good and restrict the owner's use and enjoyment of property, which the statute neither takes nor destroys without due process of law.

Appeal from a judgment of the superior court for Thurston county, Mitchell, J., entered August 24, 1917, upon a trial and conviction of having possession of clams during the closed season. Affirmed.

*E. N. Steele,* for appellant.

*The Attorney General* and *Glenn J. Fairbrook, Assistant,* for respondent.

[1]Reported in 172 Pac. 563.

WEBSTER, J.—On July 10, 1917, an information was filed in the superior court against the appellant, the charging part of which is as follows:

"Then and there being, he the said Harry Van Vlack, did unlawfully have in his possession one sack of clams purchased by him, the said Harry Van Vlack, from one C. A. Schneider, which said clams were taken for the purpose of sale on or about April 26, 1917, and subsequent to April 1, 1917, by said C. A. Schneider from tide lands abutting on Puget Sound and owned by said C. A. Schneider."

To this information, appellant filed a general demurrer, which was overruled. Refusing to plead further, sentence was pronounced and judgment thereon entered against appellant, from which this appeal was taken. The prosecution is based upon § 100, ch. 31, Laws of 1915, page 108, which reads:

"It shall be unlawful for any person to take or dig clams or mussels from any of the tide lands abutting on Puget Sound or from the waters of Puget Sound below the line of low tide, or have them in their possession, if the same have been taken for the purpose of canning or selling, between the first day of April and the first day of September of each year: Provided, that nothing in this section shall prevent the taking of these clams for consumption of the taker or his family, or guests at all times without a license." Rem. Code, § 5150-100.

It is contended by appellant, first, that the statute has no application here for the reason that the clams were dug and taken from tide lands by the owner of such lands, who, by reason thereof, had the unqualified ownership of the clams which were sold to the appellant, and that the statute in nowise affected or restricted the rights of private ownership of clam beds in tide lands abutting on Puget Sound; second, that, if the statute applies to the facts of this case, then it contravenes § 1 of the fourteenth amendment to the

constitution of the United States, as it also does § 3, art. 1, of the constitution of the state of Washington, and is therefore void.

The first proposition urged is without merit. The language of the statute is plain and comprehensive. It makes unlawful the taking or digging of clams, during the closed season, by *any* person from *any* of the tide lands abutting on Puget Sound, or from the waters thereof below the line of low tide. Tide lands are lands which in their natural state are affected by the ebb and flow of the tide. They are not divested of their classification or character as such by the mere fact that title thereto may have passed from the sovereign to the individual. Whatsoever incidents may follow the changed ownership, the fact still remains that they are known and designated as tide lands. There being no exception reserved in the act dependent upon the ownership of the land, it necessarily follows that the legislative enactment by its terms applies to all tide lands abutting on Puget Sound, regardless of whether the title thereto remains in the state or has vested in private ownership.

The second proposition involves a more serious question—whether the restrictions placed by the act upon the property of the individual constitutes a taking of his property within the meaning of the constitutional inhibition, or whether it is merely a regulation of the property right within the valid exercise of the police power of the state. At the outset it may be conceded that, because of the peculiar characteristics of the clam—its fixed habitation when imbedded in the soil—clam beds may become the subject of private ownership which passes to the grantee by a conveyance from the state of tide lands in which the beds are located. Such is the effect of the decisions of this court in *Sequim Bay Canning Co. v. Bugge,* 49 Wash.

127, 94 Pac. 922, and *Palmer v. Peterson,* 56 Wash. 74, 105 Pac. 179. In this respect clams differ from fish, game birds and game animals in their wild or natural state. The landowner acquires no vested ownership in the latter, but the state may regulate and control the subject by virtue of its sovereign power. Since the state, by reason of the private ownership of the individual, has been divested of its ownership of clam beds in tide lands conveyed by the state, its power to regulate the industry or to restrict the rights of the landowner in the use and enjoyment of his property must necessarily depend upon whether it may do so by virtue of the police power with which the state is vested; that is to say, whether the statute, as applied to private ownership, is a lawful exercise of the police power. It will be observed that the gist of the offense defined by the statute is the taking or digging of clams for the purpose of canning or selling, or having clams so taken or dug in one's possession, between the first day of April and the first day of September of each year. This is the only restriction placed upon the property right of the landowner. It neither takes nor destroys his property; it merely regulates the use of it in the interest of the general welfare by conserving a valuable food product, as we shall presently see. Provision is expressly made that he may take for his own use or for the use of his guests at all times. The sole question then is whether the legislative enactment which prevents the owner from digging and taking his clams for the purpose of selling or canning them during the prescribed period, deprives him of his property without due process of law.

It seems to be settled that courts will take judicial notice of scientific facts and natural laws which are well known and which may be found in encyclopedias, dictionaries or other standard publications treating of

the subject. 15 Ruling Case Law, page 1127, and cases cited.   And scientists have demonstrated that the spawning season of clams extends throughout the latter part of May, the whole of June, and in many cases during the entire summer.   The larvae are active and swim freely upon the surface of the water, where they are borne and scattered in all directions by the winds and tides until in a few days, the shells becoming heavier, they sink to the bottom and, resting on sea weeds, stones or other objects, become attached by byssus threads.   Soon after they cease swimming they begin to burrow, if a suitable location is found.   The Encyclopedia Americana, Subject Clam.   Nelson's Encyclopedia, Subjects Mussel and Clam.   Observations on the Soft Shell Clam by Meade and Barnes (Brown University Contributions from the Anatomical Laboratory, Vol. 4, 1905).

In the light of these facts, established by scientific research, it manifestly appears that the taking or digging of clams for commercial purposes during the period of embryo development would seriously interfere with nature's process of propagation; hence it is reasonable to assume that the legislation was enacted for the purpose of promoting the general welfare by conserving and increasing a useful and valuable food supply.   The effect of the statute is merely to prevent a private owner from so using his property as to interfere with or trench upon the corresponding ownership and rights of others, including the public.

In *State ex rel. Case v. Howell,* 85 Wash. 281, 147 Pac. 1162, Judge Ellis, delivering the opinion of the court said:

"It may be asserted, as a general rule, applicable to every phase of the police power, whether emergent or not, that, when the propriety of its exercise is called in question, the power will be sustained whenever the

given measure has any 'real substantial relations to the general good and welfare.' ''

In *State v. Pitney*, 79 Wash. 608, 140 Pac. 918, Ann. Cas. 1916A 209, the court, speaking through Judge Main said:

"In determining whether the provisions of a law bring it within the police power, it is not necessary for the court to find that facts exist which would justify such legislation. If a state of facts can reasonably be presumed to exist which would justify the legislation, the court must presume that it did exist and that the law was passed for that reason. If no state of circumstances could exist to justify the statute, then it may be declared void because in excess of the legislative power."

This is but an application of the elementary principle that every reasonable presumption should be indulged in favor of the constitutionality of legislation.

In *Thorpe v. Rutland & B. R. Co.*, 27 Vt. 140, 62 Am. Dec. 625, Chief Justice Redfield used the following forceful language which is approved by Judge Cooley in his valuable treatise on Constitutional Limitations:

"The police power of the state extends to the protection of the lives, limbs, health, comfort, and quiet of all persons and the protection of all property within the state. According to the maxim, *Sic utere tuo ut alienum non laedas,* which being of universal application, it must of course, be within the range of legislative action to define the mode and manner in which every one may so use his own as not to injure others. . . . There is also the general police power of the state, by which persons and property are subjected to all kinds of restraints and burdens, in order to secure the general comfort, health, and prosperity of the state, of the perfect right, in the legislature to do which no question ever was, or, upon acknowledged general principles, can ever be made, so far as natural persons are concerned."

Judge Story, in his work on the Constitution, at § 1954, vol. 2 (5th ed.), says:

"All the property and vested rights of individuals are subject to such regulations of police as the legislature may establish with a view to protect the community and its several members against such use or employment thereof as would be injurious to society or unjust toward other individuals. It has been justly said to be 'a settled principle, growing out of the nature of well-ordered civil society, that every holder of property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it shall not be injurious to the equal enjoyment of others having an equal right to the enjoyment of their property, nor injurious to the rights of the community. All property . . . is held subject to those general regulations which are necessary for the common good and general welfare;' and 'it must of course be within the range of legislative action to define the mode and manner in which every one may so use his own as not to injure others.' "

Measured by these definitions of the police power, we are of the opinion that the act in question, as applied to private owners of clam beds in tide lands abutting on Puget Sound, is not unconstitutional. Let it be remembered that property in clams is not the result of human effort or industry; such property is acquired by the uncontrolled forces of nature. It cannot be said, therefore, to be unreasonable to so regulate the use and enjoyment of this manna-like possession by a private owner as to conserve the interest, not only of the public, but of the private owner as well. He is not deprived of his property by the act in question. His right to enjoy it is merely suspended during the reasonable closed season prescribed by the statute. *In re Opinions of the Justices,* 103 Me. 506, 69 Atl. 627, 19 L. R. A. (N. S.) 422.

Nor are we without authority to sustain the correct-

ness of the application of the doctrine to the facts of this case. In *Windsor v. State,* 103 Md. 611, 64 Atl. 288, 12 L. R. A. (N. S.) 869, the court had before it a statute which provided that any person who shall have oysters in his possession which contained more than five per cent of shell or which shall be less than two and one-half inches from hinge to mouth, shall be guilty of a misdemeanor and subject to a fine. After carefully considering the question, it was held that the act applied to planted oysters taken from private beds in the waters of that state as well as to oysters taken from natural beds or bars, the court being of the opinion that the act was a valid exercise of the police power in that it tended to preserve a source of food supply. In *State v. Sermons,* 169 N. C. 285, 84 S. E. 337, the supreme court of North Carolina said:

"It is chiefly urged for defendant that a conviction should not be had in this instance because it appears that the dealer had procured the oysters from an individual owner of the oyster grounds; but the statute makes no such exception, and we are not aware of any principle sustaining the position. The provision establishing a closed season and requiring dealers to operate only under a regular license are among the usual methods of regulating the industry, and it is well understood that the rights of individual owners are subject to reasonable state regulations affecting their interests."

The judgment will be affirmed.

ELLIS, C. J., FULLERTON, MAIN, and PARKER, JJ., concur.