[No. 26476. Department Two. December 9, 1937.]

FRED W. WIEGARDT et al., *Respondents,* v. B. M. BRENNAN, *as the State Director of Fisheries, et al., Appellants.*[1]

[1]Reported in 73 P. (2d) 1330.

530

*The Attorney General* and *L. C. Brodbeck, Assistant,* for appellants.

*Fred M. Bond,* for respondents.

GERAGHTY, J.—This appeal is from a judgment of the superior court of Pacific county enjoining B. M. Brennan, state director of fisheries, and certain officials of Pacific county from enforcing, as against the plaintiffs, the provisions of Rem. Rev. Stat., § 5750 [P. C. § 2508], establishing a closed season within which the digging of razor clams for commercial purposes on the beaches of the Pacific Ocean, Grays Harbor, and Willapa Harbor is forbidden.

In their complaint, the plaintiffs alleged that they are the owners in fee of a tract of tide or beach land lying within the entrance to Willapa Harbor; that, at the time of the commencement of the action in September, 1936, there existed upon this land a large quantity of razor clams, the exclusive property of the plaintiffs by reason of the ownership of the beach.

"That said lands and premises are exposed to the severe weather and storms and subject to the overflow of the tides and the winds and storms cause said lands [sands] upon said tide lands to shift and change, and as soon as the same are changed said clams will be washed away or driven to some other locality and that said plaintiffs will be wholly deprived of their property of said razor clams."

It was alleged that the plaintiffs were fully equipped for the immediate harvesting and canning of these clams for commercial purposes, but that the defendants were threatening to arrest the plaintiffs if they attempted to enter upon their premises to harvest them, except as authorized by Rem. Rev. Stat., § 5750, which restricts the harvesting of razor clams to the months of March, April, and May on the beaches of Willapa Harbor; that the provisions of this section do not apply to the plaintiffs' premises, but that, if its language be held to embrace their premises, the law is unconstitutional, as violating the due process clauses of § 1 of the fourteenth amendment to the constitution of the United States and § 3 of Art. I of the constitution of the state of Washington.

After the court overruled a demurrer interposed by them, the defendants declined to plead further, and the court set the cause for hearing.

At the hearing, over the objection of the defendants, the plaintiffs were permitted to introduce testimony in support of the allegations of their complaint. At the conclusion of the case, the court made findings of fact substantially in accordance with the allegations of the complaint, and entered judgment enjoining the defendants from molesting or interfering with the plaintiffs in the harvesting of the clams upon their land between the first day of September, 1936, and the first day of March, 1937, and for a like period of

every year thereafter as long as the plaintiffs remained the owners of the described premises.

The defendants appeal.

█ The appellants contend here, as they did in the trial court, upon a special appearance, that the superior court of Pacific county was without jurisdiction to entertain this action, as being one against the state of Washington, which is required to be brought in the superior court of Thurston county. We think, however, this objection is not well taken. The action must be considered as one against the named appellants individually, since the complaint alleged that the operations of the respondents were not within the terms of the statute, but that, if its provisions embraced them, it was unconstitutional.

Under our holding in *State ex rel. Robinson v. Superior Court*, 182 Wash. 277, 46 P. (2d) 1046, and cases therein cited, this is not an action against the state of Washington, but one against the appellants individually, who were alleged to be, without authority, attempting to act in the name of the state.

█ Rem. Rev. Stat., § 5750, as far as here pertinent, follows:

"It shall be unlawful for any person or persons whomsoever to take or dig any clams, except mud clams, from the beaches of the Pacific Ocean in this state or from the beaches of Grays Harbor or Willapa Harbor, or to have in their possession if the same have been taken for the purpose of canning or for sale between the first day of June of each year and the first day of March of the following year, both dates inclusive; or to take or dig any mud clams upon the beaches of the Pacific Ocean in this state or from the beaches of Grays Harbor or Willapa Harbor, or to have in their possession if the same have been taken for the purpose of canning or for sale, between the first day of May and the thirty-first day of October, both dates inclusive, of each year; . . .

"Nothing in this section shall prevent the taking of clams for the consumption of the taker or his family or guests at all times without a license, . . ."

This section as first enacted—§ 99 of chapter 31, Laws of 1915, p. 108—established the closed season for digging clams on the beaches of the Pacific Ocean, Grays Harbor, and Willapa Harbor between the first day of June and the thirty-first day of August of each year.

In 1917, the closed season for digging clams on the ocean and harbor beaches was established as between the first day of June of each year and the first day of March of the following year. While this section has been amended in other respects by several succeeding legislatures, the closed season has remained as established in 1917.

We are of the opinion that the principles announced in the case of *State v. Van Vlack*, 101 Wash. 503, 172 Pac. 563, are controlling here. That case arose under Rem. Rev. Stat., § 5751 [P. C. § 2509], fixing a closed season for the digging of clams from the tide lands abutting on Puget Sound. The appellant there had been convicted of a violation of the section, in that he had in his possession for the purpose of sale during the closed season clams taken from tide lands abutting on Puget Sound. He contended that the statute had no application to him for the reason that the clams were taken from tide lands by the owner of the lands, who, by reason thereof, had the unqualified ownership of them and sold them to the appellant; that the statute did not restrict the rights of private owners of clam beds in the tide lands abutting on Puget Sound, but that, if the statute applied to the facts of the case, it was in contravention of the Federal and state constitutions.

It was held by the court that while clams, because

of their fixed habitation in the soil, became the subject of private ownership when title to the clam beds passed from the state, nevertheless the legislature could, in the exercise of the police power and in furtherance of the general welfare by the conservation of a valuable food product, restrict the taking of clams for sale to a specified open season.

Adverting to the rule that courts will take judicial notice of scientific facts and natural laws as expounded in publications of authority, the court said that it appeared from the investigation of scientists that the spawning season of clams extends throughout the latter part of May, the whole of June, and in many cases during the entire summer.

"The larvae are active and swim freely upon the surface of the water, where they are borne and scattered in all directions by the winds and tides until in a few days, the shells becoming heavier, they sink to the bottom and, resting on sea weeds, stones or other objects, become attached by byssus threads. Soon after they cease swimming they begin to burrow, if a suitable location is found."

The court then said that, in the light of these facts established by scientific research, it appeared manifest that the digging of clams for commercial purposes during the period of embryo development would seriously interfere with nature's process of propagation; hence it was reasonable to assume that the legislation was enacted in the interest of the general welfare by conserving and increasing a useful and valuable food supply. The effect of the statute was to prevent a private owner from so using his property as to interfere with the rights of others, including the public.

While, as we have seen, the open season—March, April, and May—in which the digging of razor clams is permitted for commercial purposes has been in effect since 1917, during which period the industry

has been, it is to be assumed, in successful operation, yet the respondents attempted to show by their own testimony and the testimony of others engaged in the digging of razor clams that the open season fixed by statute does not coincide with the life habits of that type of clam, and is not conducive to the best interest of the industry as a whole.

There was also testimony tending to show that, owing to the peculiar situation of the respondents' land within the entrance to Willapa Harbor, and its being subject to the influences of large quantities of fresh water from Willapa river, their clams could not be harvested and marketed during the open season. Assuming, as we must, power in the state, in the exercise of the police power, to limit the time within which clams may be taken and marketed commercially, and to forbid their taking during the rest of the year, it was for the legislature to determine when these seasons should begin and end.

In *State v. Somerville,* 67 Wash. 638, 122 Pac. 324, where the court had under consideration chapter 37, Laws of 1911, p. 131, establishing an eight-hour day for females engaged in certain employments, the appeal was by an employer who had been convicted of a violation of the statute. In the court below, for the purpose of showing that the act was unreasonable and arbitrary and that a maximum limit of eight hours could not be sustained, the defendant was permitted to introduce evidence tending to show that her laundry was modern, well-equipped, sanitary, and healthful; that the labor performed by the female employees therein was light and harmless; that they could thus be employed for nine hours a day without endangering or impairing their health or physical condition; and that no sufficient reason existed for a limitation of their labor to eight hours a day. The state introduced no

evidence to rebut this showing, contending that the evidence was immaterial and irrelevant.

Touching this phase of the case, the court said that the constitutionality of a statute cannot be controlled by evidence of this character; that such evidence might, with propriety, have been presented to the legislature when it had the act under consideration, but that it could not be controlling or conclusive on the courts when presented as a defense in a criminal prosecution under a statute the constitutionality of which is assailed.

"Courts in passing upon the reasonableness or unreasonableness of a statute, and deciding whether the legislature has exceeded its powers to such an extent as to render the act invalid, must look to the terms of the act itself, and bring to their assistance such scientific, economic, physical, and other pertinent facts as are common knowledge and of which they can take judicial notice."

In *State v. Pitney*, 79 Wash. 608, 140 Pac. 918, Ann. Cas. 1916A, 209, it is said:

"In determining whether the provisions of a law bring it within the police power, it is not necessary for the court to find that facts exist which would justify such legislation. If a state of facts can reasonably be presumed to exist which would justify the legislation, the court must presume that it did exist and that the law was passed for that reason. If no state of circumstances could exist to justify the statute, then it may be declared void because in excess of the legislative power."

In his testimony, respondent Fred W. Wiegardt, when asked whether there were any other privately owned tide lands in Pacific county situated similarly to his own, replied:

"Not so far as I know. I am the only owner of tidelands on which razor clams grow in the whole state."

Counsel for respondents, in opening his case, stated to the court:

"In this particular case it shows this property when Mr. Wiegardt got it in the first place, he tried to raise oysters and the action of the waves would not permit it. The sand shifts from year to year, every winter it gets the storms and as a matter of fact these clams have only been there recently; in a few months they will be gone again because of the action of the sand and waves. There has not been clams there for thirty years but only recently. The supreme court held that they are ours as long as they are there."

We do not understand the respondents to contend that their land is not embraced within the areas referred to in the statute as beaches, but rather that, owing to the exceptional conditions, the law is unreasonable and arbitrary in its application to their case. It frequently happens that regulatory laws, enacted under the police power in furtherance of some appropriate purpose, impose hardship in individual cases, due to special and peculiar circumstances; but this fact will not subject the law to constitutional objection.

While this statute forbids the harvesting of clams for sale throughout a good portion of the year, it places no restrictions upon the owner's use of the clams for himself and his guests. It is true that clams grown on beds in private ownership are the property of the owner; yet, as was said in *State v. Van Vlack, supra*, it is to be remembered that the property in clams is not the result of human effort or industry, but of uncontrollable forces of nature.

"It cannot be said, therefore, to be unreasonable to so regulate the use and enjoyment of this manna-like possession by a private owner as to conserve the interest, not only of the public, but of the private owner as well."

538

This language is especially appropriate in the present case. From the testimony, respondents' land does not appear to have been a permanent clam beach. The clams which it is sought to harvest and sell in the closed season were cast there by the fortuitous action of the winds and the tides; and, as the respondent testified, the same elemental forces may carry them away again. Surely, laws regulating an industry, based on broad considerations of public policy, cannot be avoided by the courts to meet so casual and exceptional a situation as is here presented.

The judgment of the court is reversed, and the cause remanded with direction to dismiss.

STEINERT, C. J., BEALS, MILLARD, and ROBINSON, JJ., concur.

