[No. 37673.    En Banc.    June 7, 1965.]

THE DEACONESS HOSPITAL, *Respondent*, v. WASHINGTON
STATE HIGHWAY COMMISSION et al., *Appellants.**

*Reported in 403 P.2d 54.

*The Attorney General, Delbert W. Johnson* and *Angelo R. Petruss, Assistants,* for appellants.

*Schweppe, Reiter, Doolittle & Krug, Thomas R. Beierle,* and *Benjamin H. Kizer,* for respondent.

*Lewis L. Stedman,* for amicus curiae Washington State Hospital Association.

*Williams, Cole & Kinnear* and *Kenneth A. Cole,* for amicus curiae Association of Washington Cities.

*Keith, Winston & Repsold,* by *Patrick H. Winston,* for amici curiae Spokane County Good Roads Association et al.

HAMILTON, J.—Respondent, The Deaconess Hospital, commenced this action in Spokane County, seeking to enjoin the Washington State Highway Commission, the commissioners thereof, and the director of highways from proceeding further in the location and construction of state

primary highway No. 2, a multilane freeway passing through the city of Spokane and within 65 to 70 feet from the north wing of respondent hospital. The state of Washington, as a distinct entity, was not named as a party.

In support of the relief which it sought, respondent in substance alleged that (a) it was an owner of property abutting on the proposed freeway; (b) the noise and fumes of traffic from the proposed freeway, together with projected interference with established access routes, would invade and restrict the peaceable enjoyment of the hospital properties, constitute a nuisance in fact, and cause substantial damage to respondent's property rights; (c) statutory notice and hearing requirements relating to highway planning (RCW 47.52.130 and 47.52.140) and access limitation (RCW 47.52.072) were not complied with, thus rendering appellants' actions unlawful; and (d) by reason of noncompliance with statutory procedures and because alternative and preferable routes were available, appellants' decision as to location and routing of the highway was arbitrary and capricious.

Respondent did not, in this action, seek damages. It sought only injunctive relief against the highway commission and its officers. The scope of the relief which it contemplated was (1) a permanent injunction compelling appellants to re-route the proposed highway; or (2) an injunction restraining appellants from proceeding with the proposed highway until they had complied with the statutory notice and hearing requirements; or (3) an injunction enjoining completion of the highway until respondent's damage had been ascertained and compensation paid therefor.

Appellants moved to dismiss respondent's complaint, asserting as a basis for such motion that the action was an action against the state and jurisdiction over such rested exclusively in the Superior Court of Thurston County. Affidavits and counter-affidavits were filed, and the motion was extensively argued before the trial court. The trial court denied the motion. Appellants did not seek review by way of prohibition, certiorari, or other extraordinary remedy.

Instead, appellants answered respondent's complaint, denying the material allegations thereof. A lengthy trial ensued. At the conclusion of the evidence submitted by the parties, the trial court, in essence, found and concluded that respondent was an abutting owner, and that appellants had not complied with the statutory notice and hearing requirements, had acted arbitrarily and capriciously, and as to respondent's properties, would be creating a nuisance in fact and would inflict damage upon such properties. The trial court thereupon issued a permanent injunction restraining appellants from locating and constructing the highway in question along the proposed route in front of respondent hospital.

On appeal, appellants renew their challenge to the jurisdiction of the Superior Court of Spokane County.

In support of their challenge, appellants rely upon the provisions of RCW 4.92.010,[1] and the application given thereto by this court in *State ex rel. Pierce Cy. v. Superior Court*, 86 Wash. 685, 151 Pac. 108 (1915) (a taxpayer's action to restrain the state highway commissioner, the state auditor, and the Pierce County Commissioners from issuing warrants against the state in payment for work performed under a highway construction contract); *State ex rel. Pate v. Johns*, 170 Wash. 125, 15 P.2d 693 (1932) (a student's action to compel the board of regents of the University of Washington to admit him upon payment of a state resident's tuition fee rather than a non-resident's tuition fee); and *State ex rel. Thielicke v. Superior Court*, 9 Wn.2d 309, 114 P.2d 1001 (1941) (a suit initiated against the state in Thurston County seeking recovery for property

---

[1]"Any person or corporation having any claim against the state of Washington shall have a right of action against the state in the superior court of Thurston county. The plaintiff in such action shall, at the time of filing his complaint, file a surety bond executed by the plaintiff and a surety company authorized to do business in the state of Washington to the effect that such plaintiff will indemnify the state against all costs that may accrue in such action, and will pay to the clerk of said court all costs in case the plaintiff shall fail to prosecute his action or to obtain a judgment against the state: . . ." RCW 4.92.010.

damage arising out of highway construction). In each of the cited cases, this court held that, by their nature, the actions were in essence and in substance actions against the pecuniary and sovereign interests of the state and that the jurisdiction for such actions lay in Thurston County.

■ Respondent, on the other hand, points to its allegations and evidence dealing with abutting ownership, unlawful and arbitrary and capricious action on the part of appellants as state officials, and potential invasion of and damage to its property rights, and urges that the action falls within the ambit of *State v. Superior Court for Walla Walla Cy.*, 167 Wash. 334, 9 P.2d 70 (1932) (an action initiated in Walla Walla County to enjoin the director of highways and his subordinates from changing the grade of an existing highway without ascertainment and payment of just compensation to an abutting owner); *State ex rel. Robinson v. Superior Court*, 181 Wash. 541, 43 P.2d 993 (1935) (involving an action initiated in Spokane County to enjoin the state director of agriculture from revoking a license under the provisions of the state agricultural adjustment act, an act declared to be unconstitutional); *State ex rel. Robinson v. Superior Court*, 182 Wash. 277, 46 P.2d 1046 (1935) (involving an action initiated in King County to enjoin the state director of agriculture from enforcing the provisions of a re-enacted agricultural adjustment act and canceling a license); *Wiegardt v. Brennan*, 192 Wash. 529, 73 P.2d 1330 (1937) (an action initiated in Pacific County to enjoin the state director of fisheries from enforcing a statutorily established closed season on razor clams); and *State ex rel. Fleming v. Cohn*, 12 Wn.2d 415, 121 P.2d 954 (1942) (an action initiated in Thurston County to compel the state basic science examining board to issue certificates to plaintiffs which it was alleged were arbitrarily and capriciously refused, the question being whether an appeal bond was required). In each of the cited cases, this court held that the state and its sovereign interests were not so affected as to render it a real party in interest to the action. In short, this court indicated that where the allegations of the pleadings were such as to

raise substantial issues of (a) potential damage to property without ascertainment and payment of just compensation, or (b) unlawful or arbitrary and capricious action by state officers beyond the scope of or contrary to their statutory authority, an injunctive action would lie in the county where the damages or the acts allegedly occurred or were about to occur.

In the instant case, respondent alleged prospective damage to its properties arising out of noise and noxious fumes. Within the scope of its request for relief in this respect was the possibility that the trial court might have enjoined completion of the highway project until respondent's damages were ascertained and paid. Respondent also alleged that appellants, as agents and administrators, were proceeding unlawfully and beyond the scope of their statutory authority in that they had failed to comply with the notice and hearing provisions of the statute with respect to route and access limitations. Within the scope of respondent's request for relief in this regard was the possibility that the trial court might have enjoined further development of the project until appellants had complied with the statutory provisions. The fact that respondent also alleged and emphasized a nuisance in fact and requested a permanent injunction predicated thereupon, or that the trial court followed respondent's theory in this respect, does not, from the jurisdictional point of view, necessarily obliterate respondent's other claims. Issue was joined by the appellants upon all claims at all stages of the action, and evidence was introduced and admitted bearing upon all issues. There is nothing in the extensive and spirited trial of this action to indicate that any particular facet of respondent's claims was injected purely as "window dressing" for jurisdictional purposes. Neither does the fact that respondent's claim of potential property damage emanates from alleged noise and fumes necessarily distinguish it from a claim of potential damage arising out of a change of grade or other type of physical invasion. Cf. *Ackerman v. Port of Seattle*, 55 Wn.2d 400, 348 P.2d 664, 77 A.L.R.2d 1344 (1960).

The instant case, therefore, falls within the ambit of *State v. Superior Court for Walla Walla Cy., supra* (167 Wash. 334), if not also within the circumference of the *State ex rel. Robinson v. Superior Court* cases, *supra, Weigardt v. Brennan, supra,* and *State ex rel. Fleming v. Cohn, supra.* Jurisdictionally, it was maintainable in Spokane County, and the trial court did not err in denying appellants' motion to dismiss.

Turning then to the merits, Judge Hale's opinion expresses the view of the court. We concur in his exposition and disposition thereof.

ROSELLINI, C. J., HILL, FINLEY, WEAVER, and HUNTER, JJ., concur.

OTT, J., concurs in the result.

HALE, J.—The king, it was once said, can do no wrong. Though so ancient an aphorism be held to declare the rule for today, clothing the king's sovereign successor in the same immunity, this case demonstrates a silent corollary to it, that wrong or no wrong, whatever the successor sovereign would do, his officers and agents can long be delayed in the doing of it.

The Washington State Highway Commission, its Commissioners, and the Director of Highways intend to build state primary highway No. 2 as a multilane freeway through Spokane. They started origin and destination traffic surveys as early as 1947, adapted the plans for the route and highway to the Federal Aid Highway Act of 1956 (23 U.S.C. § 128), and held public hearings on the proposed routes in 1958. Four separate arteries or plans were presented and discussed at these hearings. From these alternative proposals, the Commission selected the route in issue.

The highway will run east and west along the north edge of Fourth Avenue, 65 feet away and across the street from the north face of Deaconess Hospital's north wing on a viaduct elevated about 10 feet above the far sidewalk and about level with the first floor windows of the north wing. In this area, the freeway will be 109 feet wide, have 7 lanes for traffic, and, on its north edge away from the hospital.

a 2-lane offramp. Thus, because the ground slopes away from the front of the north wing of the hospital and the highway will be elevated about 10 feet on the viaduct to about the first floor of the north wing, patients on the first floor, north wing, will be on an approximate level with and 65 feet away from the extreme south edge of the proposed freeway. Although the freeway will project about 10 feet over the north sidewalk of Fourth Avenue in the area of the hospital, it will not overhang any part of the street but only a portion of the north parking strip. Fourth Avenue will thus be open in its full width for normal traffic.

Deaconess General Hospital asserts that the increase in noise and noxious fumes—including carbon monoxide and hydrocarbons—generated by freeway traffic will make its north wing virtually untenable for the housing of patients, and force it to abandon the north wing as a place to maintain the 100 hospital beds which now occupy this space. The loss of 100 beds at this time, when considered in relation to the laboratories, surgeries, pharmacy, nursing services, X ray, physical therapy and other facilities maintained by the hospital to supply complete hospital services for 300 patients, will, among other damages, says Deaconess, throw the entire hospital operation out of balance. Therefore, says the hospital, the freeway will, as to it, by causing tremendous increases in noise levels and noxious fumes, constitute a nuisance in fact, and should in equity be enjoined notwithstanding its location by officials of the state for a public purpose.

Bringing this suit for an injunction and for no other purpose, the hospital seeks to prevent construction of the freeway along the proposed Fourth Avenue situs and anywhere else within 300 feet of the hospital. We mention in passing that this case should neither be confused nor identified with those actions to recover for indirect damages to the freehold by what has come to be known as inverse condemnation, exemplified in *Martin v. Port of Seattle*, 64 Wn.2d 309, 391 P.2d 540; and *Ackerman v. Port of Seattle*, 55 Wn.2d 400, 348 P.2d 664, 77 A.L.R.2d 1344. Our concern is with the injunction, not monetary damages.

From a decree permanently enjoining construction of the Spokane freeway along Fourth Avenue and elsewhere "within such proximity of the hospital as to constitute a nuisance in fact" comes this appeal by the Highway Commission, its constituent members and the Director of the Department of Highways. First—and perhaps foremost— among the 39 assignments of error considered by this court is the question of jurisdiction. Appellants assign error to the trial court's refusal to dismiss the action for lack of jurisdiction in Spokane County, urging that the Superior Court for Thurston County has exclusive jurisdiction.

## JURISDICTION

Appellants, claiming the State of Washington to be the real party in interest, although not named as a party defendant, say that this is a suit against the sovereign state and cognizable exclusively in the Superior Court for Thurston County under art. 2, § 26, of the state constitution and RCW 4.92.010. Their motion to dismiss for want of jurisdiction, strenuously argued and voluminously briefed, having been denied May 27, 1963, appellants did not elect to challenge the jurisdiction by prohibition or other extraordinary remedy but, appealing now on the merits, urge the jurisdictional point anew.

Article 2, § 26, Washington State Constitution, declares:

The legislature shall direct by law, in what manner, and in what courts, suits may be brought against the state.

This court has said of this constitutional provision, "A sovereign state cannot be sued without its consent. The immunity is absolute, and, when consent is given, it may be qualified or conditional and may specify a particular court in which the permitted actions may be maintained." *State ex rel. Thielicke v. Superior Court*, 9 Wn.2d 309, 114 P.2d 1001 (1941). Earlier, speaking of this same sovereign immunity, we said, in *State ex rel. Pierce Cy. v. Superior Court*, 86 Wash. 685, 151 Pac. 108 (1915):

It is well settled that an action cannot be maintained against the state without its consent, and that the state,

when it does so consent, can fix the place in which it may be sued, limit the causes for which the suit may be brought, and define the class of persons by whom it can be maintained. In other words, the state being sovereign, its power to control and regulate the right of suit against it is plenary; it may grant the right or refuse it as it chooses, and when it grants it may annex such condition thereto as it deems wise, and no person has power to question or gainsay the conditions annexed. This state has, by its constitution (art. 2, § 26), empowered the legislature to direct by law in what manner and in what courts suits may be brought against it, and the legislature has provided that all such suits shall be brought in the superior court of Thurston county. Rem. & Bal. Code, § 886 (P.C. 453 § 9).

Pursuant to the powers granted by art. 2, § 26 of the state constitution, the legislature enacted RCW 4.92.010, the pertinent part of which reads:

Any person or corporation having any claim against the state of Washington shall have a right of action against the state in the superior court of Thurston county. The plaintiff in such action shall, at the time of filing his complaint, file a surety bond executed by the plaintiff and a surety company authorized to do business in the state of Washington to the effect that such plaintiff will indemnify the state against all costs that may accrue in such action, and will pay to the clerk of said court all costs in case the plaintiff shall fail to prosecute his action or to obtain a judgment against the state . . . .

*Claim*, as used in the foregoing section, means cause of action (*State ex rel. Robinson v. Superior Court*, 182 Wash. 277, 46 P.2d 1046 (1935); *Northwestern & Pac. Hypotheek Bank v. State*, 18 Wash. 73, 50 Pac. 586, 42 L.R.A. 33 (1897)), and extends to suits in equity. *State ex rel. Price v. Peterson*, 198 Wash. 490, 88 P.2d 842 (1939).

That the state has never placed itself on a parity with private persons as a party litigant in civil actions may be seen in the provisions of the statute requiring a cost bond so that the people at large be not improvidently taxed with court costs and expenses nor harassed by groundless or-

frivolous litigation.[2] And even in recent legislation allowing actions against the sovereign state for tortious conduct, the state has stringently qualified the privilege, imposing several restrictions including a cost bond and the filing of a detailed statement of claim with the state auditor as conditions precedent. Laws of 1963, chapter 159, p. 752 (RCW 4.92.010, *et seq.*).

The policy thus continues that, save for rigidly defined exceptions, the state permits itself to be sued exclusively in the Superior Court of the State of Washington for Thurston County, and prohibits suits against itself in other counties.

Is this an action against the state? Respondent hospital affirmatively declares that it brings this action not against the sovereign state, but on the contrary against the named and designated members of the State Highway Commission and the Director of Highways as individuals to enjoin them from officially acting in violation of the statutes and arbitrarily, capriciously, unreasonably and on a fundamentally wrong basis as public officers. The hospital specifically denies, both in its brief and complaint, that this is an action against the state, alleging in the complaint that "This action is not brought against the State of Washington."[3]

---

[2] Finding of fact 25 prophesies that others not party to this action will bring legal action to stop the freeway, as follows:

" . . .

"It is also clear that the Deaconess Hospital would not be the only institution to be disturbed, damaged or destroyed by the erection of the freeway on its present planned path. There are also schools, churches, apartments, businesses and residences to be annoyed by the noise and fumes from the loud and noisome freeway."

[3] Deaconess Hospital epitomizes its position on jurisdiction in its brief as follows:

"The trial court properly ruled that this was not an action against the state, but was an action to enjoin state officials from unlawfully exceeding their authority and unlawfully interfering with the rights of respondent, over which it had jurisdiction. Appellants ignore this allegation in the Complaint (Tr. 1):

" 'This action is not brought against the State of Washington but is brought against the individual members of the State Highway Commission, and its Director because of their individual and collective

The allegation in the pleadings and assertion in the briefs that this is not an action against the state must be regarded as conclusions and, of course, not binding upon the state. Whether the sovereign state is the real party in interest to the action remains the true issue. In resolving this issue, it would be a mistake to assume that this is an action to recover damages for injury to the hospital's freehold by a constitutional taking or damaging as was the gist of an action in inverse condemnation in *Ackerman v. Port of Seattle, supra*, where we held that frequent low airplane flights from a large airport over one's land amount to the taking of an air easement. There no injunction was sought and this court held that the damages for such a taking would be the difference in value of the property before the airport was extensively used and the value thereafter.

Nor is it correct to assume that respondent hospital contends it is an abutting owner to the proposed freeway so that it may intervene as a party in the condemnation proceedings by which the State of Washington is acquiring the right of way. The hospital's claim as an abutting owner is addressed to the matter of notice required under RCW 47.52.072 to abutting owners who will lose access to a street that is being converted into a limited-access roadway—a point we will consider later in this opinion.

Respondent hospital maintains the suit strictly to enjoin the building of the freeway along the designated route and within 300 feet of its building.[4] In asserting that the Superior

failure to heed and obey the statutes of the State of Washington, and because of the arbitrary and capricious decisions hereinafter alleged.'

"In particular, respondent sought to enjoin appellants from unlawfully creating a nuisance, for failing to follow statutory procedures in two important respects, and for arbitrarily and capriciously locating the freeway as planned. The trial court found in favor of respondent on each of these issues. It should go without saying that since the acts complained of are acts of officials going beyond their authority, the State is not interested in defending these wrongful actions and should not be held a party to this action."

[4]The prayer of the complaint requests relief as follows:

". . . that the defendants, and each of them, be permanently enjoined and restrained from locating or building said freeway at any point closer to the hospital than at a distance of 300 feet therefrom; . . ."

Court for Spokane County had jurisdiction to permanently enjoin the freeway as a private nuisance, the hospital overlooks the point that the injunction likewise halts a continuous course of conduct by the state in maintaining the freeway long into the future and far beyond the tenure of the public officials enjoined. The hospital brings to our attention a number of cases which, in our view, while showing that every action against a state official is not ipso facto an action against the state, do not seem to affirm jurisdiction in Spokane County. It refers first to *State ex rel. Robinson v. Superior Court*, 181 Wash. 541, 43 P.2d 993 (1935), as one of the two leading cases on this subject in this state.

In that case, Robinson, State Director of Agriculture, had served notice of hearing upon Newport, a creamery operator, to revoke Newport's license to do business under the State Agricultural Adjustment Act. Newport commenced an action in the Superior Court in Spokane County to enjoin the Director of Agriculture from proceeding with the revocation hearing, and the director, urging that this was an action against the sovereign state and could, therefore, be brought only in Thurston County, applied to the supreme court for a writ of prohibition to prevent the Superior Court of Spokane County from proceeding further with the injunction.

Meanwhile, in two earlier cases, it had been held that provisions of the Agricultural Adjustment Act, under which the director purported to revoke Newport's license, were unconstitutional and void. Referring to the two cases, and ruling the injunction proceedings to be not against the state, we said:

> Under those decisions, the director had no power at all to promulgate the order complained of, and his threatened action to revoke Newport's license was without the zone, and wholly in excess, of his authority. Under such circumstances, the action is one, not against the state, but against the officer acting without the scope of his authority. [Citing cases.] The action is, therefore, maintainable in Spokane county.

Nowhere in that case do the interests of the state appear important; the sole question was whether the superior court had power to prevent a public officer from exercising authority he did not possess. Because the enactment under which the director presumed to revoke the license had been held unconstitutional, he was without power to carry out the legislative purpose; and the county where the license was to be revoked was, therefore, the county of jurisdiction. Once the law under which its officers presumed to act had been declared void, the state, as a sovereign entity, lost interest in the proceedings.

In the other case referred to as a leading authority by respondent hospital, *State ex rel. Robinson v. Superior Court*, 182 Wash. 277, 46 P.2d 1046 (1935), we again have the Director of Agriculture seeking to revoke a license under the Washington Agricultural Adjustment Act followed by an injunction in the Superior Court in King County to prevent him from doing so, and prohibition to halt the superior court from assuming jurisdiction. The only question before the court was whether the Superior Court of King County had jurisdiction.

After commenting that the Agricultural Adjustment Act was unconstitutional and that the director was without power to revoke the license, we said:

> The question thus narrows itself to this: Is the action which was brought in the superior court an action against the state? *If it is, then it can be maintained only in Thurston county*, and the motion to quash the writ should have been granted. If it is not an action against the state, then the rule of immunity does not apply.
>
> It is now settled beyond question that a suit against state officers in which an attack is made against the constitutionality of a state statute is not a suit against the state. (Italics ours.)

And pointing out the distinctions between actions against public officials individually and those against the state (as shown in *State ex rel. Pate v. Johns*, 170 Wash. 125, 15 P.2d 693 (1932)), we said:

> Here, while the state may, as a matter of policy, be concerned in the welfare of its producers, the act itself

does not relate to anything which is the property of the state or to any right in which the state is concerned. *State ex rel. Robinson v. Superior Court,* 182 Wash., at 283.

*Wiegardt v. Brennan,* 192 Wash. 529, 73 P.2d 1330 (1937), likewise relied on by the hospital, seems to support the appellants' position. Actions to declare a statute unconstitutional and to prevent public officers from acting thereunder are not actions against the state and may be brought in the county where the officers will take action. *State ex rel. Robinson v. Superior Court,* 182 Wash. 277, 46 P.2d 1046 (1935). Plaintiffs, in *Wiegardt,* brought action against the Director of Fisheries to prevent his arresting them for harvesting razor clams from their own tidelands during March, April and May, directly alleging that the statute (Rem. Rev. Stat. § 5750) under which the arrests would be made was unconstitutional as repugnant to § 1 of the fourteenth amendment to the United States Constitution, and art. 1, § 3 of the state constitution.

We said:

The action must be considered as one against the named appellants individually, since the complaint alleged that the operations of the respondents were not within the terms of the statute, but that, if its provisions embraced them, it was unconstitutional.

In a later case, this court said the state is not the real party in interest in mandamus to compel the basic science examining board to issue a certificate that the applicant had obtained a passing grade when it was claimed that examination papers had not been fairly graded. Nothing in the cause indicated that the sovereign state was the real party in interest or had any paramount concern with the results other than its general interest that justice be done. *State ex rel. Fleming v. Cohn,* 12 Wn.2d 415, 121 P.2d 954 (1942). *State v. Superior Court for Walla Walla Cy.,* 167 Wash. 334, 9 P.2d 70 (1932), cited by the hospital, will be considered *infra.*

Although the hospital deliberately refrained from naming the state as a party defendant, it has enjoined the

only agency and the only state officers extant authorized and empowered to carry out the state's sovereign powers to build and maintain a system of highways. Allegations that the officials intend to carry out this constitutional power in an arbitrary, capricious or unreasonable manner, or on a fundamentally wrong basis, or create a private nuisance in the exercise of this sovereign power, do not, even if proved, take the state out of the case if it is the real party in interest.

The individual appellants and the Highway Commission as an organ of government comprise the only agents of government charged by law with carrying out the state's highway program. We know of no other agency or public officers having this power or duty. See RCW, title 47. The state has thus, for the time being, vested in the Highway Commission, the director and officers, its sovereign authority to build and maintain highways.

The state, not the commission, director or members thereof, supplies the money and exercises the sovereign powers of eminent domain in acquiring the right of way. And it is the state which will become the owner and wield exclusive jurisdiction over the right of way against everyone except the United States.

It is the state, not merely its officers and agents, which is directly precluded from building the freeway by this injunction; it is the state, apart from the injunction upon the acts of its officers and agents, that is totally blocked by this injunction from discharging its sovereign powers, now and permanently. The state may constitutionally relieve these officers of their powers and duties and transfer them to other officers, or vest these identical powers in the Governor or in others, or create a new and different agency to exercise exclusive dominion over the highway system on behalf of the sovereign; or it may divide the duties and powers among several governmental entities. But whatever steps may be taken, by whatever officials in building and maintaining a state primary highway, the sovereign state is, in the final analysis, the actor taking the steps. It is the

State of Washington, *not its officers, agents or functionaries,* acting under its constitutional authority in eminent domain, which is constructing and will own and maintain the freeway.

Our decisions on this question of jurisdiction point directly to the conclusion that the Thurston County division of the superior court had exclusive jurisdiction. *State v. Superior Court for Walla Walla Cy.*, 167 Wash. 334, 9 P.2d 70 (1932), cited by both appellants and respondent marks the distinctions between actions of state officials and actions of the sovereign. We there sustained an injunction to prevent the State Highway Director from damaging *abutting* real property without undertaking condemnation proceedings. Plaintiffs showed that they were abutting owners on Preston Avenue in Waitsburg, Walla Walla County; that they had improved their properties with reference to the established grade; that Preston Avenue was a part of the state highway. Plaintiffs alleged that the defendant officials "were proceeding to raise the grade of Preston avenue, without legal right and in violation of plaintiffs' constitutional rights as *abutting owners* . . . and that no proceedings had been had for the purpose of ascertaining the damage which plaintiffs would suffer because of changing the grade." (Italics ours.) The state, contending that the action was against it and, therefore, cognizable only in Thurston County, applied for a writ of prohibition to prevent the Superior Court of Walla Walla County from proceeding further.

In denying the writ, we held that the action could be tried in the county where the damages were claimed because the purpose of the action was to compel the state to bring a condemnation petition—a cause triable in the county where the land is situated. Referring to an earlier case (*State ex rel. Pierce Cy. v. Superior Court*, 86 Wash. 685, 151 Pac. 108 (1915)), in which Thurston County had been held to have exclusive jurisdiction, we said:

We carefully pointed out in that case that the funds there involved were the funds of the state, and that the officers were not charged with acting in excess of the

authority conferred upon them by law. Here, the contrary is alleged by plaintiffs in the principal action.

. . . .

That a change of an established grade of a street or highway may constitute a damage to the property of *abutting* owners for which they are entitled to recover, has been consistently held in this state from *Brown v. Seattle*, 5 Wash. 35, 31 Pac. 313, 32 Pac. 214, 18 L.R.A. 161, to *Great Northern Railway Co. v. State*, 102 Wash. 348, 173 Pac. 40. In the last cited case, we held that the same rules of law, under our constitution, applied to the state as to other municipalities within the state; that the fact that the state did not condemn the owner's property in advance did not absolve it from liability; and that the constitutional provisions were designed to protect all the essential elements of ownership which make property valuable. (Italics ours.)

and, finally:

Our constitutional provision respecting eminent domain is very strict and positive, and somewhat farther reaching than other similar constitutional provisions we have examined. It certainly would be evaded if, under the legislation permitting persons to sue the state only in Thurston county, in all cases where the state takes or damages private property without first purchasing or condemning and paying into court the damages therefor, landowners from remote corners of this large state were forced to sue in Thurston county for their constitutional damages.

In all such cases, the state goes to the county in which the land is situated to purchase by negotiations or to condemn, if necessary; and it cannot justly be said that these state highway officers, although acting in good faith and innocently, can damage the property of plaintiffs in the original action and compel them to sue in Thurston county to recover their damages, or to enjoin the state officers from proceeding without legally acquiring the right by contract or condemnation. The state, like any other appropriator of private property, must go to the courts having local jurisdiction of the property. Condemnation actions are strictly local in their character.

In *Walla Walla*, the officials were proceeding to take and damage property for public use without just compensation having been first made or paid into court as prescribed by

art. 1, § 16 of the state constitution. Complainants were *abutting* owners, claiming damage as such to their freeholds. Quite properly, they were entitled to enjoin the state's officers from usurping the powers of the sovereign and proceeding as condemnors until the state brought condemnation proceedings in Walla Walla County under its sovereign powers in eminent domain, thereby giving abutting owners their day in court on the question of damages.

No one claims in the instant case that the state is proceeding other than under a valid constitutional exercise of power to acquire the freeway right of way; nor does Deaconess claim damages to the market value of its real estate as an abutting owner.

Lest there be any doubt as to the significance of the *Walla Walla* holding, we refer to *State ex rel. Pate v. Johns*, 170 Wash. 125, 15 P.2d 693 (1932), which, in turn, commented on the *Walla Walla* decision. In *Pate*, we held that an action against the regents of the University of Washington to compel the registrar to accept a lower tuition than the amount demanded was in reality and legal effect an action against the state because such fees are required by law to be covered into the state treasury. The action, therefore, involved state funds and ought perforce be brought in Thurston County. Referring to *Walla Walla* in support of this decision, we said of it:

> There, the state was not the real party in interest entitling it to support its officers whose conduct, though in good faith, was threatening to damage one's private property in violation of the state's own constitution; that kind of a situation creates no real interest on the part of the state. Here, the state is interested in the enforcement of one of its laws designed to produce revenue for the help and maintenance of its University. In this affair, the *state has a real, direct and positive interest.* (Italics ours.)

If the state has a real, direct and positive interest in the maintenance of its University, assuredly it has a real, direct and positive interest in the maintenance of its highways.

And in an action brought in Yakima County against the members of the Tax Commission to enjoin the collection of the sales tax on baseball admissions and to have the statute under which the tax was assessed declared unconstitutional (*Weber v. School Dist. No. 7 of Yakima Cy.*, 185 Wash. 697, 56 P.2d 707 (1936)), we said:

> Clearly, the superior court for Yakima county was without jurisdiction to proceed in the cause. The sole purpose of this action was to determine the title to the amount of money deposited by the respondents in the superior court for Yakima county. It was not alleged or contended in the trial court, nor was it argued on appeal, that the appellant tax commissioners claimed this money as individuals. They claimed it only as agents of the state. It follows that the action was, in fact, an action against the state, hence could only be maintained in the superior court for Thurston county.

But perhaps the strongest authority on the point is *State ex rel. Thielicke v. Superior Court*, 9 Wn.2d 309, 114 P.2d 1001 (1941), where relators brought an action for damages against the state in Thurston County, alleging injury to their real and personal property in King County from construction of the tunnel approaches to the Lake Washington pontoon bridge. After answer, relators moved for change of venue from Thurston to King County on the statutory ground that the convenience of witnesses and the ends of justice would be thereby forwarded. The trial court, finding good cause to grant the change of venue on the grounds urged, nevertheless, denied it under RCW 4.92.010, the very statute at issue in the instant case. On mandamus to compel the court to order a change of venue to King County, we said:

> The decisions of this court have uniformly indicated that we regard Rem. Rev. Stat., § 886 [RCW 4.92.010], as a statute of jurisdiction rather than merely one of venue. We have many times held that, when a suit against the state is commenced in a superior court outside Thurston county, such court does not have jurisdiction of the action. *State ex rel. Pate v. Johns*, 170 Wash. 125, 15 P. (2d) 693; *State ex rel. Slade v. Jones*, 182 Wash. 94, 45 P. (2d) 30; *Weber v School Dist. No. 7*, 185 Wash.

697, 56 P. (2d) 707; *State ex rel. Shomaker v. Superior Court*, 193 Wash. 465, 76 P. (2d) 306; *State ex rel. Price v. Peterson*, 198 Wash. 490, 88 P. (2d) 842.

and, pointing out the significance of *Walla Walla Cy., supra,* went on to say:

> In that case, certain land owners sought to enjoin the state highway director from damaging their real property by changing the grade of a state highway without first instituting a condemnation action, as required by the state constitution, to ascertain the compensation to be paid for such damage.

We affirmed a similar analysis of *Walla Walla Cy., supra,* in *State ex rel. Slade v. Jones*, 182 Wash. 94, 45 P.2d 30 (1935).

The officers and agents of the state in building this freeway, unlike their counterparts in *Walla Walla, supra,* purport to act and are acting in exercise of the powers of eminent domain on behalf of the state. They have brought petitions in condemnation in the name of and negotiated for the state and have taken every step lawfully available to the state under the constitution by which to acquire the right of way. An injunction against them inescapably runs against the state and blocks the state from exercising its sovereign powers, for there is no other way in which the state can acquire the right of way. The state, therefore, being most vitally affected, is the real party in interest and the party actually enjoined.

Deaconess Hospital, having brought and maintained this suit to enjoin the state from committing a nuisance in building and maintaining a freeway within 300 feet of its building, is maintaining a claim against the State of Washington—a claim cognizable only in Thurston County. RCW 4.92.010. The Superior Court for Spokane County was, therefore, without jurisdiction to hear the cause. It was, accordingly, error for the Superior Court for Spokane County to deny appellants' motion to dismiss for want of jurisdiction.

Had the case been brought here on prohibition or certiorari before trial on the merits, there is little doubt

that we would have terminated the proceedings in Spokane County. But we now have for review on a voluminous record a fully litigated case, encompassing 39 separate assignments of error. The parties have brought here a trial record made in a court of general and virtually unlimited jurisdiction whose constituent judges have constitutional and common-law power to sit in all judicial districts of the state—and it can be thus said that, although the Superior Court for Spokane County lacked jurisdiction in particular, the judges of the Superior Court of the State of Washington generally had jurisdiction over both the parties and subject matter of this case. Thus, the trial was no mere academic exercise, but a genuine, adversary proceeding to resolve and finally determine all issues.

An overly rigid adherence to the policy that this court, having decided that the Superior Court for Spokane County lacked jurisdiction, ought not review the other claims of error, conceivably could work a marked injustice on the prevailing party by exposing it to further delay and expense through a revival of the action in Thurston County, making the loser a winner, and vice versa.

All rules of law and equity have for their ultimate purpose the furtherance of justice and the prevention of injustice. The rules governing appellate review should be applied to that end here.

If, because the Spokane County division of the superior court committed error in retaining the cause for trial, we treat the case as moot or purely advisory, there exists a chance that many of the issues will be retried in the Superior Court for Thurston County, delaying again the decision in a matter of great moment. Since the issues raised by the pleadings are of general public import—likely to recur elsewhere—and involve the expenditures of millions of dollars appropriated by the Congress and which could conceivably lapse from nonuse, further long delay in resolving the issues so ardently pressed here would represent a failure in judicial administration. Viewing this case as genuinely adversary, fully tried and argued by the parties on justiciable issues, affecting an important segment of the

state's highway system, identified with the public interest, and involving millions of dollars in public funds, we deem it appropriate to consider the other assignments of error on their merits.

This we did in *National Elec. Contractors Ass'n v. Seattle School Dist. No. 1, ante* p. 14, 400 P.2d 778 (1965), a suit to enjoin the installation of an electrical switchboard by the school maintenance department and to compel that the job be opened for competitive bids. Long after the switchboard had been installed by the maintenance department, we considered the case on review, saying:

> Obviously, the electrical switchboard has been installed and is in use. Whether the Seattle School District should have been enjoined from doing that work is a matter of interest and concern so far as future installations are concerned, but is of only academic interest insofar as the present litigation is concerned.

We thereupon proceeded to construe the statute in a genuine review of the issue, adopting a widely acknowledged rule from other jurisdictions that, where matters of important public interest are involved, the appeal may be retained even though the questions presented may be moot, citing *State ex rel. Yakima Amusement Co. v. Yakima Cy.*, 192 Wash. 179, 73 P.2d 759 (1937). Mootness can as well be claimed to deprive a court of jurisdiction as other jurisdictional deficiencies, for the courts have no business determining academic problems or deciding controversies having only theoretical existence.

If, as the dissent in *National Elec. Contractors, supra,* suggests, the principal danger to a review on the merits is that some of the adversary enthusiasm may be lost, one can be assured from a study of the record in the instant case that adversary enthusiasm reached its highest possible pitch, culminating in blocking for several years, a gigantic public project through the injunctive processes of a court having no jurisdiction in the premises.

Recently, in *Grein v. Cavano*, 61 Wn.2d 498, 379 P.2d 209 (1963), in a suit brought by members against the officers of a labor union to force an accounting, and we said that

the case became moot because of an intervening election of officers, one of the principal issues raised by the pleadings was whether and in what amount the plaintiffs should be awarded attorneys' fees. Despite the intervening mootness, resulting in no determination or judgment, this court in a considered review of the issue as to attorneys' fees adopted the theory that the action was brought to preserve, defend or create a common fund and gave our opinion on the merits of this question. We said there:

> The only significant issue, as we see it, is the ultimate issue in this case. Did the trial court commit reversible error in awarding $9,052.48 in costs and attorneys' fees to respondents (the plaintiffs in this action) when neither party prevailed because the case was dismissed as moot?

The same philosophy underlying these cases—to prevent a manifest injustice—prompted this court in *State ex rel. Washington State Fin. Comm. v. Martin*, 62 Wn.2d 645, 384 P.2d 833 (1963), to adopt the doctrine of prospective overruling and thus preserve the validity of nearly two-thirds of a billion dollars in school revenue bonds unconstitutionally, but in good faith, issued and purchased under a decision of the court, and from which the state had derived a marked benefit. It therefore seems right to review *sui generis* this case on appeal.

We go to the merits, however, without receding in any degree from the rule that the Supreme Court does not render advisory opinions or decide moot questions. We reserve a rule that occasionally there will arise a question of such general public interest and importance, tried in a genuinely adversary proceedings on truly justiciable issues that, even though intervening questions going to the jurisdictional authority of the trial court might serve to end the particular case in a particular court, the questions of law and fact can be said to survive, thereby granting this court a discretion in the public interest to hear and determine the appeal on the merits.

## REVIEW ON THE MERITS

Passing now to the merits, respondent presented two issues at trial involving notice of public hearing. The first,

relating to a notice required under RCW 47.52.130, involved changes in plans after the hearing. We need not discuss this point further because, in our opinion, the trial court was in error in finding want of compliance, and the appellants' assignment of error on the point is well taken.

The other question, relating to notice, should be discussed and arises under RCW 47.52.072, requiring notice to abutting owners and affording them opportunity to be heard if an existing highway, road or street is to be established as a limited access facility. Respondent hospital says that it will be an abutting owner to the new freeway where it runs parallel to the face of and across the street from its north wing because, as the owner in fee of property abutting Fourth Avenue, it ipso facto owns to the center of that street subject only to its use as a street, and cites *Nystrand v. O'Malley*, 60 Wn.2d 792, 375 P.2d 863 (1962); and *Motoramp Garage Co. v. Tacoma*, 136 Wash. 589, 241 Pac. 16, 42 A.L.R. 886 (1925). Respondent reasons that, since the freeway viaduct overhangs the north sidewalk of Fourth Avenue, the state will own the north one half of Fourth Avenue and the hospital the south one half, making them abutting owners within the meaning of RCW 47.52.072.

Within the purposes of RCW 47.52.072,[5] is Deaconess

---

[5]"No existing highway, road or street, or portion of an existing highway, road or street may be established as a limited access facility until the owners or reputed owners of the abutting property of the section affected, as indicated in the tax rolls of the county be given notice of such proposal and an opportunity to be heard thereon. Such notice shall be served upon such owners or reputed owners by United States mail in writing and shall designate the existing highway, road or street or portion thereof, which it is proposed shall be designated as a limited access facility and shall set a time for hearing as to such proposal which time shall be not less than thirty days after mailing of such notice. . . . *Provided*, That any property owner or owners may waive in writing the requirements of said hearing as set forth herein as may affect ownership of property abutting on said proposed limited access highway." RCW 47.52.072.

"For the purposes of this chapter, the term 'existing highway' shall include all highways, roads and streets duly established, constructed, and in use. It shall not include new highways, roads or streets, or relocated highways, roads or streets, or portions of existing highways, roads or streets which are relocated." RCW 47.52.011.

General Hospital an abutting owner to a street being converted into a limited access facility? Accepting respondent's view, arguendo, that it has fee ownership to the center of the street because the hospital's property abuts upon the south side of Fourth Avenue, thus making the hospital an abutting owner entitled to statutory notice, we must ask what the legislature hoped to accomplish by these notice provisions.

■ The owner of property abutting upon a public street has a right to use the street for ingress and egress. *Fry v. O'Leary*, 141 Wash. 465, 252 Pac. 111, 49 A.L.R. 1249 (1927). Converting such a street to a limited access facility, if it shuts off an abutting owner's ingress thereto, damages the abutting owner's property rights and is compensable in eminent domain. *State ex rel. Sternoff v. Superior Court*, 52 Wn.2d 282, 325 P.2d 300 (1958). RCW 47.52.072 through RCW 47.52.075 is designed to give the abutting owners on a street, who may lose access thereto, an opportunity to be heard and present alternate plans before the damage is done them. *State ex rel. Dawes v. State Highway Comm'n*, 63 Wn.2d 34, 385 P.2d 376 (1963). Thus, the legislature sought to provide a hearing for owners suffering a direct damage through loss of ingress and egress to and from the existing street when the existing street, highway or way is converted to limited access. If such access is left intact, then no damage can be said to follow for in such case the owner has not lost his easement of ingress and egress. Since the state may, in eminent domain, take the whole or portion of the freehold for highway purposes, it may likewise do the lesser damage and cut off the abutting owner's access to the street, subject to the owner's constitutional right to just compensation for loss of ingress and egress. *State v. Calkins*, 50 Wn.2d 716, 314 P.2d 449 (1957). It follows, then, that, unless the abutting owner will lose or suffer substantial loss of ingress or egress to an existing street, he is not entitled to the notice prescribed in RCW 47.52.072.

■ Fourth Avenue will be left open and free to traffic by the freeway which will pass parallel to and above its north parking strip. All ingress and egress rights now vested

in the hospital relating to Fourth Avenue will, so far as freeway construction is concerned, remain undisturbed. In building the freeway, the state is neither acquiring nor foreclosing the hospital's access rights to the street, nor making a limited access facility of Fourth Avenue. With the entire width of Fourth Avenue and the parking strips and sidewalks on both sides untrammeled by the freeway, Deaconess Hospital does not have the status of an abutting owner to "an existing highway, road or street" which will be "established as a limited access facility." RCW 47.52.072. Not being an abutting owner, it was entitled to no statutory notice under this section. This conclusion seems not at variance with our holding in *State ex rel. Duvall v. City Council of Seattle,* 64 Wn.2d 598, 392 P.2d 1003 (1964), for there it appeared without question that some of the protestants were abutting owners to an existing street which would be changed into a limited access highway.

Respondent convinced the trial court that, in building the proposed freeway along the northern edge of the hospital and within 65 feet of its north wing, the Highway Commission acted arbitrarily, capriciously and on a fundamentally wrong basis in law and fact. It carried the day at trial on this point by submitting evidence that the freeway could be brought in along Third Avenue instead of Fourth with equal or less cost and also suggested two other routes. The hospital says that several reasonable alternative routes exist which at once would not damage the hospital and yet would accomplish the state's purposes in building the freeway. Among these possibilities, it suggests the Third Avenue route and two others, and the other three alternative routes considered by the Highway Commission. The trial court accepted these proposals as reasonable alternatives and, accordingly, found the selection of the Fourth Avenue route to be arbitrary, capricious and upon a fundamentally wrong basis. Appellants make various assignments of error to this proposition.

That building a freeway necessitates taking of private property for a public purpose admits of little argument. *State ex rel. McPherson Bros. Co. v. Superior Court,*

148 Wash. 203, 268 Pac. 603 (1928); *State ex rel. Flick v. Superior Court*, 144 Wash. 124, 257 Pac. 231 (1927). So plenary are the state's powers in eminent domain that it may take land for highway purposes even though the taking may trench upon the railroad right of way. *State ex rel. Puget Sound & Baker River Ry. Co. v. Joiner*, 182 Wash. 301, 47 P.2d 14 (1935). Once the purpose for which the lands are taken has been adjudged to be public, the kind and type of roadway, the route to be followed, the design and engineering details become the subject of administrative decision. These decisions will not be set aside or molested by the courts unless shown to have been arrived at without statutory authority or by bad faith or fraud, or capriciously or arbitrarily.

Although the courts may well determine from the evidence whether a project is for the public benefit, convenience or necessity, they are not trained or equipped to pick the better route, much less design and engineer the project. Thus, the rule that leaves these decisions to the administrative agencies is a sensible one consistent with the idea that the public's business be carried out with reasonable efficiency and dispatch by those possessing the superior talents to accomplish the public purposes.

By what tests should the court gauge administrative decisions? Here are the principal standards: Did the agency proceed in accordance with and pursuant to constitutional and statutory powers? Were the agency's motives honest and intended to benefit the public? Were they honestly arrived at—that is, free from influence of fraud and deceit? Were they free of any purpose to oppress or injure—even though injury and damage to some may be inherent in accomplishing the particular public benefit? Did the administrative agency give notice, where notice is due, and hear evidence where hearings are indicated? Did the agency make its decision on facts and evidence? Were its actions in the last analysis rational, that is, based upon a reasonable choice supported by facts and evidence? If the answers to all of these queries are in the affirmative, then the decision

of an administrator, unless placed under complete judicial review by law, cannot be held arbitrary, capricious, unreasonable or oppressive by the courts. That the courts may have reached a decision, made a choice or a conclusion different from that of the administrative agency, or taken wiser or more sensible action, does not empower them to do so.

Courts ought not substitute their judgment for that of the administrative agency (*State ex rel. Dawes v. State Highway Comm'n,* 63 Wn.2d 34, 385 P.2d 376 (1963)); nor review the wisdom of administrative decisions unless such review will shed substantial light on the method by which the decisions were reached. If the administrative agency has acted honestly, with due deliberation, within the scope of and to carry out its statutory and constitutional functions, and been neither arbitrary, nor capricious, nor unreasonable, there is nothing left for the courts to review. A different conclusion would place the judiciary in the untenable position of substituting its judgment for that of the administrative agency contrary to a number of decisions on this particular point. *State ex rel. Dawes v. State Highway Comm'n., supra; State ex rel. Cosmopolis Consol. School Dist. No. 99 v. Bruno,* 61 Wn.2d 461, 378 P.2d 691 (1963); *Miller v. Tacoma,* 61 Wn.2d 374, 378 P.2d 464 (1963); *Smith v. Hollenbeck,* 48 Wn.2d 461, 294 P.2d 921 (1956); and *Lillions v. Gibbs,* 47 Wn.2d 629, 289 P.2d 203 (1955).

A review of the record shows that the Highway Commission surveyed and studied several routes for the Spokane freeway, including the possibility of bypassing the city entirely. It gave weight to many factors such as amount of traffic one route would carry in comparison to another, keeping in mind the destinations of travelers; it measured and compared the costs of land acquisition, and the costs of construction as affected by differences in terrain. It gave notice to everyone entitled thereto, heard everyone who wished to be heard, and, deliberating upon its decision, finally selected the Fourth Avenue route. That the trial court in its wisdom found a different route preferable to the one designated by the State Highway Commission and

granted an injunction to avoid, in its view, a needless damage, amounted in final analysis to the trial court's asserting its judgment in an area of government reserved for the Highway Commission. The Fourth Avenue route, therefore, was neither an arbitrary nor capricious nor unreasonable choice.

One final observation should suffice to conclude our opinion—the question of private nuisance. The trial court found that the increased noise levels in the north wing area, coupled with the increased pollution of air, both generated by the great increases in automotive traffic, constituted a private nuisance as to Deaconess Hospital and ought be enjoined as such.

Plaintiff presented substantial evidence derived from expert studies and opinion that the noise and pollution levels will make its north wing useless for housing patients when the traffic reaches maximum projected estimates. The state countered with evidence that the hospital will be unharmed from either increased noise or air pollution, and offered to prove that several hospitals in the United States have suffered no loss in function or use from the building of multiple lane freeways or highways close by. The state also argues that increasing traffic congestion in the downtown areas of Spokane, with stop-and-go driving, acceleration and deceleration, already have produced changes in the noise levels and pollution greater than the changes to be caused by a freeway.[6]

---

[6]The state submitted additional evidence that all noise is not necessarily bad or distracting, but frequently is useful and beneficial in preventing distraction or damage from other kinds and types of disturbing sounds. Thus, one of its experts testified, by way of example, that a library, contrary to popular opinion, ought not be noise free but should have rather substantial noise levels. He expressed the view that, if a library were acoustically free of noise or sound, such minor sounds as the turning of a page, the placing of a book, or even the turning on of a light switch might be disturbing to the occupants, and that this whole idea of freedom from sound as being beneficial is in fact scientifically erroneous.

As an expert in acoustics, the witness pointed out that hospitals are in fact quite noisy. Conversations in corridors, rattling of dishes, moving of carts, people walking, furniture being moved, opening and

Accepting plaintiff's theory that the freeway will so increase the noise levels and air pollution as to create a nuisance in fact—as distinguished from a nuisance per se—against the hospital, the trial judge found as a fact that the nuisance will be created and granted an injunction on this ground *inter alia.*

■ We consider this finding of nuisance as fact to be error. The freeway is to be built not only under general statutory authority of the highway statutes, but also pursuant to specific enactment of the legislature establishing this highway as state primary highway No. 2, to be known as the Sunset Highway. RCW 47.16.020. No claim is made that the highway derives its nuisance qualities from faulty design or negligence in construction or that it will be improperly maintained. The fact of nuisance found to exist in futuro by the court comes directly from the consequences of proximity. Deaconess Hospital wishes to enjoin the highway—not generally as a nuisance but specifically within 300 feet of its buildings. Our legislature seems to have anticipated this very situation, for in 1881 (based on an earlier statute, Laws of 1875, § 4, p. 79), it re-enacted the following:

> Nothing which is done or maintained under the express authority of a statute, can be deemed a nuisance. Code of 1881 § 1238; RCW 7.48.160.

Since, as we have pointed out, the claim of nuisance here derives not from the negligent maintenance, use or improper construction of the proposed freeway but from its intended location within 300 feet of the hospital, we feel that it comes within the meaning and effect of the statute

closing of doors, and placing of equipment and utensils on tables and chairs, are as much masked acoustically by external sounds from the streets and highways as the added quantum of noises from the outside could be said to increase the disturbing effect on the occupants.

. Both parties submitted substantial evidence along scientific lines relating to increases in, degrees of, and the masking by decibels of perceived sound, the wave lengths in cycles, *etc.*, and, indeed, the ultimate physical nature. But the scientific aspects of this fascinating evidence is probably not essential to the understanding of the legal issues to be here resolved.

(RCW 7.48.160) and cannot, therefore, be enjoined as a private nuisance.

The judgment is reversed with instructions to dismiss the claim and vacate the injunction. So ordered.

Ott, J., concurs with Hale, J.

Donworth, J. (concurring in part and dissenting in part) —I concur in Judge Hale's opinion in so far as it holds that the trial court did not have jurisdiction of the subject matter of this action, because that subject matter is a right of action created by the legislature, which has decreed that such an action may be brought only in the Superior Court for Thurston County.

However, being of the opinion that the trial court had no jurisdiction to try the case, I think that this court should simply dismiss the action. The only authority cited for the gratuitous rendering of an opinion on the merits, is *National Elec. Contractors Ass'n v. Seattle School Dist. No. 1, ante* p. 14, 400 P.2d 778 (1965). That was not a case in which the trial court lacked jurisdiction of the subject matter, or in which we lacked jurisdiction to decide the appeal. It was rather a case which had been rendered moot during the period of litigation, and some authority, though slight, could be found for rendering an advisory opinion in such a case.

But the rule governing the proper behavior of this court in a case such as this is clear and undisputed. In *Fortier v. Fortier*, 23 Wn.2d 748, 162 P.2d 438 (1945), we said that, where the trial court did not have jurisdiction to pass upon the merits of the controversy presented to it, *this court does not have jurisdiction to consider the merits on appeal.* Its only power is to order the action dismissed.

Lack of jurisdiction over the subject matter renders the trial court powerless to pass on the merits of a controversy brought before it. *State v. Northwest Magnesite Co.*, 28 Wn.2d 1, 182 P.2d 643 (1947). In the case of *In re Elvigen's Estate*, 191 Wash. 614, 71 P.2d 672 (1937), we quoted with approval the following from 1 Freeman, Judgments 674, § 337 (5th ed.):

"Jurisdiction of the subject matter is essential in every case; a condition precedent, in a way, to the acquisition of authority over the parties. A judgment is a mere nullity if pronounced by a court which undertakes to exercise authority over matters wholly outside the powers conferred upon it by law."

Sub silentio, Judge Hale's opinion has overruled *Fortier v. Fortier, supra,* and the other reputable authorities cited herein.

While a litigant may waive or be estopped to assert a want of jurisdiction over his person, he may not do so where there is no jurisdiction over the subject matter. *In re Puget Sound Pilots Ass'n,* 63 Wn.2d 142, 385 P.2d 711 (1963).

And, in 14 Am. Jur. *Courts* 367, § 167, it is stated succinctly:

A universal principle as old as the law is that the proceedings of a court without jurisdiction are a nullity and its judgment without effect either on the person or property. In other words, a court without jurisdiction over a case cannot enter judgment in favor of either party. It can only dismiss the case for want of jurisdiction.

While Judge Hale's opinion does not hold that the state waived its objection to the jurisdiction of the trial court by failing to apply for a writ of prohibition or certiorari when its motion to dismiss was denied, it seems to attach some significance to this fact and appears to assume that it justifies the rendering of an opinion on the merits. The contention that there was a waiver is without merit. The objection that the court does not have jurisdiction over the subject matter *cannot* be waived.

The objection that the court has no jurisdiction may be raised at any time. Rule on Appeal 43, RCW vol. 0. It may and should be raised by the court on its own motion if it is not raised by the parties. *Dux v. Hostetter,* 37 Wn.2d 550, 225 P.2d 210 (1950); *Ullom v. Renton,* 5 Wn.2d 319, 105 P.2d 69 (1940).

As I view the law, Judge Hale's opinion should have ended at the point where it was determined that the trial

court lacked jurisdiction of the subject matter of the action. Since this much of the decision necessitated the further decision that this court lacks jurisdiction to decide the merits of the appeal, all the remainder of the opinion is, in my view, a nullity.

I, therefore, concur with Judge Hale that the trial court lacked jurisdiction of the subject matter, but dissent from the remainder of the opinion which passes on the merits.

September 14, 1965. Petition for rehearing denied.