[No. 42463.    En Banc.    June 27, 1974.]

VERNON H. WYATT, *Appellant*, v. THE UNIVERSITY OF
WASHINGTON, *Respondent*.

*Ziontz, Pirtle & Morisset,* by *Robert L. Pirtle,* for appellant.

*Slade Gorton, Attorney General,* and *James B. Wilson, Senior Assistant,* for respondent.

UTTER, J.—Captain Vernon H. Wyatt appeals from a judgment of dismissal by the Superior Court which affirmed the findings, conclusions and orders of the Higher Education Personnel Board of the University of Washington. The personnel board ruled that Wyatt, as Master of the vessel *R. V. Thompson,* was properly excluded from the classified service by the Board of Regents of the university and was properly dismissed by the university from his position.

We find that the determination of the Higher Education Personnel Board is a final, nonappealable order and the exemption of the position of Master of the *R. V. Thompson* from the state personnel law and the higher education personnel law was proper and, accordingly, affirm the trial court.

Appellant was hired by the university on a temporary basis as first officer in naval ocean research for 2 months in 1961. Beginning October 24, 1964, he was employed by them as Master of the *Brown Bear.* During his service in these positions, he was a member of the classified service under the State Civil Service Law, Laws of 1961, ch. 1. On September 21, 1965, the university received delivery of the research vessel *R. V. Thompson,* a vessel specifically built for oceanographic research and which is 209-feet long. It replaced the *Brown Bear,* a vessel half its size and limited in its capacity. In June of 1965, the Board of Regents of the University of Washington, upon recommendation of the Department of Oceanography, exempted from the classified staff two positions within the department, the marine superintendent and the Master of the *R. V. Thompson.*

Captain Princehouse, who also served as the marine superintendent of the Department of Oceanography, was the initial Master of the *R. V. Thompson* and received it on behalf of the university in September. The *Brown Bear* was then retired from service and on January 3, 1966, appellant replaced Captain Princehouse as Master of the *R. V. Thompson,* where he continued to serve until his termination effective October 15, 1970.

Following his dismissal, appellant, on October 21, 1970, filed through his attorney, a "notice of appeal" with the personnel board appealing his dismissal. A motion to dismiss this appeal was made by the university on the ground that appellant's position as Master of the *R. V. Thompson* was exempted from the classified staff of the University of Washington at the time the position was created and continued to be so and that the personnel board, therefore, had no jurisdiction to hear his appeal. Appellant then filed a notice of appeal from exemption with the personnel board and they consolidated the two motions for purposes of hearing.

The board entered findings determining that the Board of Regents of the University of Washington "had authority to determine the exempt status of the Master of the R. V. Thompson." They also found that the regents acted reasonably and properly in determining that the "position of the Master of the R. V. Thompson was declared to be exempt from the classified service on June 18, 1965, and has continued to be so" and that the position "should be" exempt from the classified service. The appeal of the exemption was then dismissed and the board determined it had no jurisdiction to hear the appeal of the dismissal inasmuch as the position was properly exempted from the classified staff of the University of Washington.

The laws relating to appellant's classification are the State Civil Service Law, RCW 41.06; Laws of 1961, ch. 1, and the State Higher Education Personnel Law, RCW 28B.16. Section 5 of the 1961 act requires the Board of Regents to "designate three (3) of its members as a permanent Personnel Committee . . . to enforce and perform for all its non-academic personnel, except those in positions specifically exempted by the governing body on analogy to the exemptions of section 7 of this act, the policies and duties given to the State Personnel Board by [the other appropriate sections of the act]."

Pursuant to this authority, the Board of Regents on June

18, 1965, exempted from the classified staff the position of Master of the *R. V. Thompson*. The State Higher Education Personnel Law gave to the governing board of each institution the authority to exempt from the act, subject to the employee's right of appeal to the Higher Education Personnel Board, classifications involving research activities. RCW 28B.16.040 (5). Pursuant to this authority, the Board of Regents continued the exemption of numerous positions within the university previously exempted under the 1961 act, including the position of Master of the *R. V. Thompson*, on January 16, 1970.

■ The appeal of the exemption by appellant to the Higher Education Personnel Board was under RCW 28B.16.120 (3) which provides that "when an appeal is initiated under this subsection the decision of the higher education personnel board shall be final."

This provision in the statute, for finality of the decision of the Higher Education Personnel Board on the issue of whether their determination is final and nonappealable, is conclusive of this question. Absent arbitrary and capricious action, this court will not interfere with that administrative determination where its jurisdiction has been circumscribed by statute. *Deaconess Hosp. v. State Highway Comm'n*, 66 Wn.2d 378, 403 P.2d 54 (1965). The apparent theory of the Board of Regents in exempting the position of appellant as Master of the *R. V. Thompson* was that, in light of the numerous research functions of the vessel, his job as master was more closely analogous to a research position than that of master of a smaller vessel which was part of the classified employment program of the university.

■ While there are plausible arguments that can be made that this analogy is incorrect, we do not find it so extended as to hold that there has been arbitrary and capricious action by the Board of Regents. *State ex rel. Cosmopolis Consol. School Dist. 99 v. Bruno*, 61 Wn.2d 461, 378 P.2d 691 (1963). The uniformity of application and reliance

upon the presumed expertise of the Higher Education Personnel Board is preserved by this policy of finality and is a proper legislative determination. *Gogerty v. Department of Institutions*, 71 Wn.2d 1, 426 P.2d 476 (1967). In that case the court recognized that the legislative intent was for the personnel board to become, by virtue of background and experience on the job, especially knowledgeable in the field of civil service administration. *Cunningham v. Community College Dist. 3*, 79 Wn.2d 793, 489 P.2d 891 (1971).

Appellant argues that the issue in the case is not whether the position as Master of the *R. V. Thompson* was properly exempted but whether, in fact, he was discharged without the proper procedure when he was changed from captain of the *Brown Bear* to captain of the *R. V. Thompson*. Alternately, he claims that even if this was not in fact a discharge, he should have been affirmatively notified that he was moving from a nonexempt to an exempt position. There is nothing in the record to compel this court to hold that appellant was dismissed from his job as Master of the *Brown Bear* and therefore the civil service rules pertaining to dismissal should have been followed. On the contrary, the record shows the position as Master of the *Brown Bear* was being eliminated with the retirement of the vessel and that the appointment as Master of the *R. V. Thompson* was to a position which was already exempted by the Board of Regents.

A member of the classified staff may take "a temporary appointment in an exempt position, with the right to return to his regular position, or to a like position, at the conclusion of such temporary appointment." Laws of 1961, ch. 1, § 10; RCW 28B.16.050. Appellant has not sought relief under this section of the act and what his rights are, if any, under this provision we do not determine.

Contrary to appellant's claim, there is no requirement that the Higher Education Personnel Board act before the Board of Regents itself acts to determine exempt classifications in certain categories. To so hold would require the

personnel board to review "on appeal" its own determination made prior to the action by the Board of Regents. The statutory procedure followed in this case does give the appellant the right to have the Higher Education Personnel Board review the actions of the Board of Regents in establishing exempt classifications. The personnel board did in fact affirm the action of the regents in creating the exemptions.

■ Appellant urges that the university had an affirmative duty to notify appellant that he was moving from a classified position to an exempt position. No authority is cited to sustain the imposition of this affirmative duty on the university under the facts of this case and we decline to so hold. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

The judgment is affirmed.[1]

FINLEY, HAMILTON, STAFFORD, and BRACHTENBACH, JJ., concur.

HALE, C.J. (dissenting)—What's in a name? Everything, it appears. When the University of Washington named Captain Wyatt Master of the ship *R. V. Thompson,* it named him out of a job. I think this was arbitrary and capricious and a nonclassifying act of purported classification.

An administrative body having the responsibility of making classifications, whether of things, functions or persons, is obligated to do so on a systematic basis, else its handiwork will be either arbitrary and capricious or an act not amounting to the process of classification. And the business of exempting things from designated classification is as much an act of classifying as is the act of including them. Thus, to officially declare without more that the Master of the *R. V. Thompson* is exempt by merely naming the ship —i.e., not protected by the civil service laws and regulations of the State—is a purported act of classifying, arbitrary and capricious on its face.

---

[1] Judge William F. LeVeque participated as a Justice Pro Tempore at the argument of this appeal, but died prior to the filing of the opinion.

In 1961, Captain Wyatt had been first employed by the university as a first officer on a temporary basis where he served for only 2 months. But beginning on October 24, 1964, he was appointed Master of the *Brown Bear*, one of the university's research vessels. As Master of the *Brown Bear*, there is little doubt that he came under the State's civil service statutes (Laws of 1961, ch. 1, p. 7; RCW 41.06), and was entitled to their protection. Thus protected and covered by the State civil service laws, he continued in a classified position as Master of the *Brown Bear* for nearly a year, until September 21, 1965, when he was promoted to command a larger vessel. On that date, respondent university appointed Captain Wyatt Master of the *R. V. Thompson*, another and larger research vessel, and relieved him of command of the *Brown Bear*. After he had been appointed to command the *R. V. Thompson*, the university retired the *Brown Bear* from service—a fact which ought not, I think, have burdened Captain Wyatt in his new position.

His employment as captain of both ships was continuous, and the new and larger command amounted to a promotion. The parties agree that, when offering the promotion, the university did not notify Captain Wyatt that the Board of Regents had exempted the Master of the *R. V. Thompson* on June 18, 1965, from the classified civil service. Captain Wyatt accepted the promotion believing that he continued as a member of the classified civil service. From January 3, 1966, through October 15, 1970, he served as Master of the *R. V. Thompson* on various research voyages—at all times serenely assuming that he continued to be a member of the classified civil service.

That Captain Wyatt was deprived of his civil service status through an arbitrary and capricious act of purported classification is, I think, apparent from this record. Indeed, to merely name the Master of the ship *R. V. Thompson* as exempt, without more, while presumptively keeping other research vessels under the civil service was ipso facto an arbitrary and capricious act and in my judgment a nonclassification. Indeed, in the some 6½ pages of positions de-

8

clared to be exempt from the classified civil service, the *R. V. Thompson* research vessel is the only one that does not describe the position to be exempt but rather the place or thing connected with the work. The statement of exemption does not purport to exempt all ships' Masters employed by the university, nor the Master of those particular ships above a given length, or beam, or tonnage, or horsepower, nor does it otherwise create a classification based on the use to which the ship may be put, or of the voyages it may be required to take, nor set forth any other criteria upon which a reasonably prudent ship's Master employed by the university could take notice that there existed some logical basis in fact for classifying one ship as a civil service ship and another as a noncivil service ship.

The court's opinion works out so that, if the university, while Captain Wyatt was in command, had, for one reason or another, changed the name of the *R. V. Thompson* research vessel to, for example, the *Donaldson*, that simple act of ceremonial dedication would have restored Captain Wyatt to full civil service status instanter, with all of the rights, privileges and powers thereunder appertaining.

HUNTER and WRIGHT, JJ., concur with HALE, C.J.